1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10  DONALD NEUHAUS, LINDA
    NEUHAUS and KIMBERLY SNOWDEN,

11

            Movants,

12

        vs.                              No. MISC 07-0025 FCD GGH

13
    UNITED STATES SECURITIES AND
14  EXCHANGE COMMISSION,

15          Respondent.              ORDER[1]

16  _____/

17          Presently before the court is movants' motion to quash SEC subpoena, filed April

18  4, 2007. Respondent filed an opposition to the motion to quash on April 13, 2007. This matter

19  is before the undersigned pursuant to an April 20, 2007 referral order by the Honorable Frank C.

20  Damrell.

21  /////

22  /////

23

24          [1] The court orders the result here in that although the district judge referred the matter to
    the undersigned, Local Rule 73-302(a) requires that magistrate judges use their order jurisdiction
25  whenever the law would permit the exercise of such jurisdiction. The subpoena matter here is no
    different from any discovery matter for which it is indisputable that magistrate judges would
26  have order jurisdiction, e.g. Fed. R. Civ. P. 45.

1

1  BA`CKGROUND

2       Movants Donald Neuhaus, Linda Neuhaus and Kimberly Snowden[2] seek to quash
3  Securities and Exchange Commission ("SEC") subpoenas to produce documents, issued March
4  20 and 21, 2007 on Tri Counties Bank and Wells Fargo Bank, respectively. The SEC seeks all
5  documents relating to accounts held by movants individually in regard to both subpoenas, and to
6  movants "DBA American Financial Services" in regard to the Tri Counties Bank subpoena only.[3]
7  These subpoenas are based on an SEC Order of Investigation regarding a company owned by Mr.
8  and Mrs. Neuhaus, American Financial Services, Inc. ("AFS"), which was later called Secure
9  Investment Services, Inc. ("SIS"). Movants seek to quash the subpoenas, "except as to the
10  individual account identified in the Tri-Counties subpoena." Mtn. Quash at 2. After an order
11  requesting clarification, movants explain that they seek to quash all subpoenas to the extent they
12  seek information from personal, as opposed to corporate, bank accounts. Therefore, they do not
13  seek to quash bank account numbered 321002420, as it is the general business account of AFS.

14       The SEC indicates that the Order of Investigation, which the court has permitted
15  to be filed under seal, authorizes investigation of whether the registration and/or antifraud
16  provisions of the securities laws have been violated by SIS, AFS and Cash for Life, Inc.
17  ("CFL"),[4] or "their officers directors, employees, partners, subsidiaries, and/or affiliates, and/or
18  other persons or entities, directly or indirectly," between 2001 and the present, by virtue of
19  having offered and sold unregistered securities through fractional interests in discounted life

20

21

22       [2] Mrs. Snowden's husband is a principal in the firm representing movants in this case.

23       [3] A letter dated March 30, 2007, from movants' counsel to the SEC states that AFS is not
   a dba but a corporation authorized to do business in California. This letter also states that there is
24  no account in the name of "Donald F. Neuhaus/Linda A. Neuhaus/Kimberly Ann Snowden dba
   American Financial Services." (Norcross Decl., Ex. 2). The SEC's letter of April 2, 2007
25  disputes this claim. (Id., Ex. 3).

26       [4] According to movants, CFL has not existed since a date prior to the time period for
   which records are sought.

2

1  insurance policies, and whether any fraud has occurred in the sales of these products.[5]

2          Movants argue that the subpoenas should be quashed as to all three individuals.[6]
3  First, Mrs. Snowden claims that of the four accounts she maintains at Wells Fargo, two are joint
4  accounts with her husband, an attorney, and her income is not deposited into either of these
5  accounts but rather they contain her husband's separate earnings. As a non-party, his personal
6  records should not be examined. As to the other two accounts, Mrs. Snowden states that she is
7  controller of SIS and deposits her wages into these accounts. There is no allegation of improper
8  payment of wages, and the two other employees of the corporation were not subpoenaed.
9  Therefore, Snowden argues that these accounts are not relevant.

10          Movant Linda Neuhaus asserts that although she is a shareholder and nominal
11  director on the corporate accounts, she does not sign anything on any of these accounts, has no
12  active role in AFS or SIS and receives no income from them. Her only connection to the
13  investigation is that she is married to Donald Neuhaus. She contends that the SEC has not
14  established her receipt of funds, or that receipt was improper.

15          Movant Donald Neuhaus concedes that he is a principal shareholder and officer of
16  AFS and SIS. Nevertheless, he argues that he receives no salary, commissions, bonuses or other
17  compensation, only loans secured by promissory notes, and therefore the SEC can not
18  demonstrate improper payments to him. Second, he contends that the SEC can not establish that
19  loans to him constitute "improper use" of investor funds. The corporate records contain this
20  information, not his personal banking records, and therefore the subpoenas as to him are not
21  relevant.

22

23  [5] The transactions under investigation involve the discounted sale of life insurance
    benefits potentially payable to elderly or infirm beneficiaries who have little time to live.
24  Movants would allegedly then sell interests in the benefits soon to be paid to "investors." The
    SEC believes that these sales are securities which need to be registered.

25  [6] Movants state that financial records for Donald and Linda Neuhaus are held by Tri
    Counties Bank. Financial records for Kimberly (and husband Kelly) Snowden are held by Wells
26  Fargo Bank.

1       On April 20, 2007, this court issued an order permitting a determination on the

2   motion by April 27, 2007, despite the statutory requirement that such decisions be made within

3   seven calendar days of the filing of a response to the motion to quash, as this matter did not come

4   to the court's attention until April 20, 2007. See 12 U.S.C. § 3410. On April 26, 2007, after

5   reviewing the pleadings, the court ordered clarification of specific issues, and made the

6   determination that a final order was not required to be issued until May 4, 2007. After receiving

7   supplemental briefing, the court now issues the following order.

8   DISCUSSION

9       I. Procedural Requirements Under 12 U.S.C. § 3410

10      Movants have cited no law in support of their position, other than the Right to

11  Financial Privacy Act of 1978 ("RFPA"), generally. After issuing its order of April 20, 2007,

12  this court performed further review of the statutory requirements underlying the RFPA.

13      If a "customer" of a "financial institution" is subpoenaed by a "government

14  authority," the government's sole right to obtain financial records of the customer is governed by

15  the RFPA, 12 U.S.C. § 3402. In the event that a government authority subpoenas financial

16  records under RFPA, and a dispute arises over whether the records are properly subject to

17  subpoena, RFPA further provides:

18          If the court finds that the customer has complied with subsection (a)
            of this section, it shall order the Government authority to file a
19          sworn response. . . .

20  12 U.S.C. § 3410(b).

21      Pursuant to the quoted section of the RFPA, the court first is required to determine

22  whether the motion to quash complies with § 3410(a) before the government's response, if any,

23  is filed, and before the seven day period commences to run. Nothing in §3410(b) permits the

24  government to accelerate the court's required finding pursuant to § 3410(a) by its unilateral,

25  unordered filing of an opposition. Because the court has not yet made the § 3410(a)

26  determination, the opposition in response filed on April 13, 2007, is premature. After reviewing

4

1  the motion to quash, the court now finds, for purposes of § 3410(a), that Donald Neuhaus, Linda
2  Neuhaus, and Kimberly Snowden, as individuals, are customers of a financial institution as
3  defined in 12 U.S.C. § 3401(5).

4      II. Right to Financial Privacy Act

5          The RFPA permits customers to contest government access to certain records held
6  by banks and other financial institutions. See Securities Exch. Comm'n v. Jerry T. O'Brien, Inc.,
7  467 U.S. 735 (1984). RFPA is the exclusive means by which "government authority" can
8  acquire financial records of a *non-party* "customer" (individual) via a judicial subpoena from a
9  "financial institution." 12 U.S.C. §§ 3402, 3407, 3413(e) (ordinary discovery rules apply to
10 parties in an action). Conversely, if applicable, the objection-to-production provisions of RFRA
11 are the exclusive means by which a "customer" can challenge the government's subpoena of
12 financial records. 12 U.S.C. § 3410(e).

13         The RFPA requires the government authority to notify the bank customer a
14 subpoena is being served on a financial institution and the nature of the law enforcement inquiry
15 to which the subpoena relates. 12 U.S.C. § 3407(2). Within ten days of service or fourteen days
16 of mailing the subpoena, the customer may file a motion to quash in the district court which
17 issued the subpoena. 12 U.S.C. § 3410(a). The RFPA provides "three grounds on which the
18 district court may quash a subpoena: (1) the agency's inquiry is not a legitimate law enforcement
19 inquiry or (2) the records requested are not relevant to the agency's inquiry or (3) the agency has
20 not substantially complied with the RFPA." Sandsend Financial Consultants, Ltd. v Federal
21 Home Loan Bank Board, 878 F.2d 875, 882 (5th Cir. 1989).

22         It is not disputed that the SEC's inquiry is a legitimate law enforcement inquiry or
23 that the agency has substantially complied with the RFPA. What movants dispute is the
24 relevance of the information sought through investigation to the legitimate purposes of the
25 inquiry as outlined in the order directing private investigation. However, the SEC's burden is not
26 a heavy one. The SEC need only show that it is engaged in a "legitimate" law enforcement

5

1 activity and it has a "reasonable belief" that the sought records are relevant to that legitimate

2 investigation. 12 U.S.C. § 3410(c).

3            For the reasons that follow, this court finds the SEC has met its burden to

4 demonstrate reason to believe the sought records are relevant to any legitimate inquiry before the

5 court pursuant to the Order of Investigation.

6            "The ultimate burden of showing that the records sought are relevant to a

7 legitimate law enforcement inquiry is on the government." Collins v. Commodity Futures

8 Trading Comm., 737 F. Supp. 1467, 1480 (N.D.Ill.1990).

9            An agency 'can investigate merely on the suspicion that the law is
           being violated, or even just because it wants assurance that it is

10            not.' Morton Salt, 338 U.S. at 642, 70 S.Ct. at 363, 94 L.Ed. at
           410. So long as the material requested 'touches a matter under

11            investigation,' an administrative subpoena will survive a challenge
           that the material is not relevant. Elrod, 674 F.2d at 613 (quoting

12            Motorola v. McLain, 484 F.2d 1339, 1345 (7th Cir.1973), cert.
           denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287 (1974)).

13

Sandsend, 878 F.2d at 882.

14            The SEC alleges that the subpoenaed documents are relevant because it has

15

16 evidence of apparent illicit conduct in connection with AFS, SIS and CFL's viatical or life

17 insurance investment sales program, and movants are closely linked to those companies. For

18 example, the SEC alleges that Mr. Neuhaus is president and possibly alter ego of two of the

19 entities which sold unregistered securities under investigation. The SEC has attached a copy of a

20 desist and refrain order issued by the State of California regarding sales of unregistered securities

21 without disclosing material information (such as the fact that the securities are unregistered and

22 that he has been ordered to cease and desist), as well as investor alert issued by the California

23 Department of Corporations, in which Donald Neuhaus is named as a seller of fractional life

24 benefit interests without a California broker-dealer license and without disclosing material

25 information. (Exs. to Opp'n.) The SEC also points to Mr. Neuhaus' concession that he used his

26 own funds to buy bonds from IFS, indicating that he is using his own bank accounts to operate

1  these viatical or life insurance sales programs, which in turn indicates the possibility of self-
2  dealing. Both Mrs. Neuhaus and Mrs. Snowden are listed as officers and/or directors of these
3  entities. (Exs. to Opp'n.) The SEC's reply, filed May 1, 2007, includes an exhibit reflecting a
4  withdrawal by Mrs. Snowden in the amount of $425,000 on April 21, 2006, from a Wells Fargo
5  account held by SIS. (Ex. A to Reply). The verification of SEC attorney Lloyd Farnham, attests
6  to the facts set forth in the SEC's opposition, and its reply. (Ex. C to Opp'n; Ex.B to Reply.)

7          The SEC also seeks the bank records in order to determine if investor funds were
8  deposited into these accounts and to trace where these funds have been redirected. The
9  investigation of these bank records may reveal whether there are other individuals or entities
10 involved in wrongdoing.[7] The SEC also asserts that inquiry into the entities' bank accounts or
11 corporate ledgers would not necessarily tell the full story. The SEC will not assume that such
12 records are complete; there may have been indirect transfers through intermediaries to the
13 recipients which would not be reflected in the corporate records. Although Mrs. Neuhaus and
14 Mrs. Snowden represent that they received no funds from AFS, SIS or CFL, the SEC insists that
15 it is not required to accept such assertions but may perform inquiry to corroborate these
16 statements. According to the SEC, even if Mrs. Neuhaus is not involved in any way, if her
17 husband engaged in any securities laws violations, she could be unjustly enriched as a result of
18 any community property interest.

19         The SEC is correct. It is entirely reasonable to believe that tainted monies
20 accruing from the sale of "securities" may well have found their way into otherwise innocent
21 accounts. This conclusion is all the more reasonable given the legal connection of all movants to
22 the targeted companies and their personal relationship to each other. Movants confuse the
23 burden of proving wrongdoing and the individuals' connection to that wrongdoing with the

24

25         [7] Even if it is shown that funds were redirected to an innocent party, the SEC states that
26 ill gotten gains may be retrieved, even from an innocent party, citing SEC v. Colello, 139 F.3d
   674, 676 (9th Cir. 1998).

1   burden of showing only a reasonable belief that looking into bank accounts may be relevant to an

2   investigation.

3             Accordingly, the SEC has met its burden to demonstrate that the sought records

4   pertain to its investigation of allegedly illegal conduct of entities or persons related to SIS, AFS,

5   or CFL.

6   **CONCLUSION**

7             IT IS HEREBY ORDERED that movants' motion to quash, filed April 7, 2007, is

8   denied.

9   DATED: May 4, 2007

10

11                            /s/ Gregory G. Hollows
                         GREGORY G. HOLLOWS
                         U. S. MAGISTRATE JUDGE

12

13   GGH:076
   neuhaus0025.qua

14

15

16

17

18

19

20

21

22

23

24

25

26

8